ACALUS L. PALMER et al., Respondents, v. THE GREAT WESTERN INSURANCE COMPANY, Appellant.

In an action upon a policy of marine insurance on freight, for a voyage from Cuba to the United States, which insured against perils "of the seas, winds, rocks, sands, shoals and coasts, collisions and sinking at sea, fires, jettisons, loss by * * * barratry of the master and mariners, and all other losses and misfortunes * * * occasioned by sea perils," it appeared that on May 5, 1879, the vessel sailed from a port of Cuba; that it filled with water forty-eight hours after leaving port, the weather being fine during the whole time; that it was abandoned and afterwards burned by the captain's order. No accident occurred except the cross-bar of one of the pumps broke. It did not appear whether the pump was thereby rendered useless or whether it was repaired. It was proved that in December, 1878, at Cardiff, Wales, the vessel was put in first-rate seaworthy condition to stand a winter voyage to Cuba and thence to the United States. The pilot who took her in and out the port of Cardiff, and the master of another vessel who was on board of her just before sailing from that port, on several occasions, swore that she was seaworthy for a voyage with a full cargo from that port for New York. It was stipulated that three experienced stevedores, who assisted in loading the vessel for her last voyage, and the pilot who took her out of the port, would testify that, in their opinion, she was seaworthy. *Held,* that the question of seaworthiness was one of fact, as was also the question whether the vessel was lost by any of the perils insured against; and so, were properly submitted to the jury.

*It seems,* that in such an action, the bill of lading unauthenticated, the master of the vessel being alive, is not competent evidence against the insurers of the kind or quantity of the cargo or the amount of freight due on delivery.

Where, however, the bill is received as evidence of the truth of the statements contained therein, in the absence of an exception, the objection is not available on appeal.

Reported below, 22 J. & S. 503.

(Argued October 7, 1889; decided December 3, 1889.)

APPEAL from a judgment of the General Term of the Superior Court of the city of New York, entered upon an order made at the November Term, 1886, which affirmed a judgment in favor of plaintiffs entered upon a verdict, and affirmed an order denying a motion for a new trial.

This action was brought on an open marine policy of insurance for the recovery of the damages alleged to have been sustained by a loss of freight.

The policy, No. 64118, was issued by the defendant October 28, 1878, "Upon all kinds of lawful goods and merchandise, laden or to be laden on board the good vessel or vessels as agreed at time of indorsement." The risks assumed were as follows: "Touching the adventures and perils which the said Great Western Insurance Company is contented to bear, and takes upon itself in this voyage, they are of the seas, winds, waves, rocks, sands, shoals and coasts, collisions and sinking at sea, fires, jettisons, loss by pirates, rovers, or assailing thieves, barratry of the masters and mariners, and all other losses and misfortunes that have or shall come to the hurt, detriment or damage of the said goods or merchandise or any part thereof, occasioned by sea perils, subject, however, to such clauses, terms and rates of average as are contained in the memorandum in this policy, unless otherwise agreed upon in writing." The indorsement was as follows:

"Date of entry, *March* 24, 1879.

"Name of vessel, bark, The Brothers' Pride. To be insured from port in Cuba to port north of Hatteras. The risk, freight. Amount to be insured, $5,000. Rate of premium, 1½. Amount of premium, $75."

The plaintiffs claimed that the vessel was laden with eight hundred and sixty-three hogsheads of melado to be delivered at New York for $5.25 per hogshead, amounting to $4,530.75.

At the close of the plaintiffs' case, the defendant moved that the complaint be dismissed, on the grounds; (1) That there was no loss of the vessel proved by the perils of the sea or by barratry; (2) That the evidence was insufficient to support a policy on freight, because it could not attach until

there was a cargo laden on board; (3) That there was no evidence that the vessel sailed on the voyage insured against; (4) The vessel having met with no sea peril, the conclusive presumption is that she was unseaworthy when she sailed; (5) That preliminary proofs of loss must be true proofs, and it is not a presentation of true proofs of loss, or the proofs of loss required by the policy, for the plaintiffs to present a marine protest, as here presented, showing the absolute contrary of the facts in evidence. The motion was denied and, the defendant offering no evidence, the case was submitted to the jury, which found a verdict of $4,528.25, with interest, for the plaintiffs.

Further facts are stated in the opinion.

*Treadwell Cleveland* for appellant. The court erred in refusing to dismiss the complaint upon the ground that there was no proof to support a policy on the freight, and no proof that there was a cargo laden in good faith on board the vessel. (*Storey* v. *Brennan,* 15 N. Y. 526; *Boulett* v. *N. Y. & H. R. R. Co.,* 59 id. 365; *Dwight* v. *Ins. Co.,* 103 id. 358.) No matter by whom produced, the charter-party and bill of lading could not be proof of their contents for the plaintiffs; they are merely declarations by the plaintiffs' agents, and of no force or effect as evidence of the facts therein stated against the defendant. (*Paine* v. *Ins. Co.,* 69 Me. 568; *Newman* v. *Cordell,* 43 Barb. 454.). The court erred in refusing to dismiss the complaint, and to direct a verdict for the defendant upon the ground that there was no proof that the vessel had encountered a sea peril. (*Abrath* v. *N. E. R. R. Co.,* L. R., 11 Q. B. Div. 449; *Berwind* v. *Ins. Co.,* 21 J. & S. 102; *Ross* v. *Hunter,* 4 T. R. 38; *Wright* v. *O. Ins. Co.,* 6 Bosw. 278, 279; *Allison* v. *Ins. Co.,* 57 N. Y. 91; *Prescott* v. *U. Ins. Co.,* 1 Whart. 408; *Talcott* v. *C. Ins. Co.,* 2 Johns. 129.) The opinion of witnesses as to latent facts to establish a state of things opposite to that established by positive testimony as to patent facts was admissible. (*Prescott* v. *U. Ins. Co.,* 1 Whart.

408; *Watson* v. *Clark*, 1 Dowl. Pr. 344; *Wright* v. *O. Ins. Co.*, 6 Bosw. 269; *Van Wickle* v. *M. Ins. Co.*, 97 N. Y. 350; *Allison* v. *Ins. Co.*, 57 id. 91; *Dudgeon* v. *Pembroke*, L. R., 9 Q. B. 596.) The plaintiff's position that when evidence of seaworthiness has been offered · there arises a presumption of loss by a peril insured against, which can be rebutted, is untenable. (*Rugely* v. *S. M. Ins. Co.*, 7 La. Ann. 603; *Talcott* v. *C. Ins. Co.*, 2 Johns. 124; *Wright* v. *O. Ins. Co.*, 2 Bosw. 269; *Walsh* v. *W. Ins. Co.*, 32 N. Y. 436; *Van Wickle* v. *M. Ins. Co.*, 97 id. 350; *Berwind* v. *G. Ins. Co.*, 114 id. 232; *Paddock* v. *F. Ins. Co.*, 11 Pick. 227; *Prescott* v. *U. Ins. Co.*, 1 Whart. 399; *Watson* v. *Clark*, 1 Dowl. Pr. 344; *Dupeyre* v. *W., etc., Ins. Co.*, 2 Robt. 457.)

*W. W. Goodrich* for respondents. The vessel was lost by barratry or one of the perils assured against. (*Moores* v. *Underwriters*, 14 Fed. Rep. 254; *Palmer* v. *G. W. Ins. Co.*, 15 J. & S. 457.) All that is necessary to show an insurable interest in the freight is for the vessel to have incurred any expense upon the voyage towards earning it, such as proceeding to the port of loading, or, if in port, getting in berth, and preparing to receive the cargo. (*Foley* v. *U. F. and M. Ins. Co.*, L. R. [5 C. P.] 155; *Robinson* v. *M. Ins. Co.*, 1 Metc. 145; 1 Phillips on Ins. § 327; *Flint* v. *Fleming*, 1 B & A. 145.) The English law does not require the assured to prove seaworthiness, but the American law, while it differs with the English law, and requires the assured to prove seaworthiness, still requires only the slightest proof upon the subject. (*Moses* v. *S. M. Ins. Co.*, 1 Duer, 159; *Borland* v. *M. Ins. Co.*, 14 J. & S. 433; *Patrick* v. *Hallett*, 1 Johns. 241; *Moores* v. *Underwriters*, 14 Fed. Rep. 226.)

Follett, Ch. J. May 5, 1879, The Brothers' Pride sailed from Cardenas, a port on the north side of Cuba, for New York, and was lost forty-eight hours after leaving port. The uncontradicted evidence is that from the hour of sailing to the hour when wrecked the weather was fine, with about a four-knot wind. She met with no accident except the cross-

bar to one of her pumps broke, but how, when, or whether the pump was rendered useless or whether it was repaired does not appear. The vessel filled with water, it was testified, was abandoned and afterwards burned by the order of its captain. It seems to be assumed that the water came in through a leak, but the witnesses were silent as to the time when the leak was discovered or in what part of the vessel it occurred, if it did occur. Upon these circumstances, apart from others, the court, on a trial by jury under established rules, should presume that the vessel was unseaworthy when it left the port, and direct a verdict for the defendant or a dismissal of the complaint. But the circumstances happening after the vessel left port are not all bearing on the question of her seaworthiness. In December, 1878, she entered the port of Cardiff, in Wales, and left January 5, 1879, laden with coals for Cienfuegos, a port on the south side of the Island of Cuba. A shipwright testified that while she lay at Cardiff he repaired and put her in first-rate seaworthy condition to stand a winter voyage to Cuba, and thence to the United States. The pilot who took her in and out of the port of Cardiff testified that she appeared quite seaworthy. The master of another vessel testified that while The Brothers' Pride was lying in the port of Cardenas, in May, 1879, he was on board on several occasions, and that she was seaworthy for a voyage, with a full cargo from that port for New York. Three experienced stevedores, who assisted loading her at Cardenas, and the pilot who took her out of that port, testified, or rather it was stipulated that they would testify that, in their opinion, she was seaworthy. A mate employed on the vessel testified: " The vessel was laborsome in the rough weather that we had coming out from Cardiff towards Cienfuegos; she rolled a good deal in the rough weather; during the rough weather the pumps were going nearly all the time for the first three weeks; after we got fine weather she did not make so much water." The steward testified that after her cargo was discharged at Cienfuegos she took in stone ballast, rocks and dunnage wood, no cargo, and proceeded to Cardenas

where the ballast was discharged and a cargo, said to be melado, was taken on board.

Under this state of the evidence, the question of seaworthiness was one of fact for the jury, and they found that she was seaworthy. This greatly simplifies the case. The vessel being seaworthy when she left Cardenas, only forty-eight hours before loss, the trial court, under the circumstances of this case, would not have been justified in holding that the wreck was not caused by any of the perils insured against, and very properly took the opinion of the jury upon that question. The learned counsel for the defendant did not ask that the jury be required to find by which peril the vessel was lost, nor did he pray for an instruction that there was no evidence that she was lost by this or that peril, and so, by elimination, hold the jury to a definite issue; nor did he except to the general instruction that the jury were to determine whether she was lost by any of the perils insured against, and so the record does not disclose which peril caused the loss. It looks like "barratry of the master or mariners," but that was insured against, and there is no evidence in this record that would have sustained a verdict that the owners participated in the fraud, if fraud there was.

Was there a valid contract under which the plaintiffs would have been entitled to collect freight equal to the amount of the verdict upon the delivery of the cargo in New York? The record contains the following: "Plaintiffs' counsel here offered in evidence the protest and bill of lading, which were admitted subject to the objection that they were not proof of their contents." But the case does not contain the protest nor the bill of lading, but a copy of the latter was presented on the argument; the counsel, however, disagree as to whether the trial court received it as evidence of the truth of the recitals therein or only as part of the preliminary proofs of loss. A perfect record would have prevented a controversy which this court has no means of determining. The bill of lading was signed only by the master and contained the words Weights and contents unknown." The master was that

plaintiffs' agent (3 Kent's Com. 206), and being alive when this action was tried, the unauthenticated bill was not competent evidence, as against the insurers, of the kind or quantity of the cargo nor the amount of freight due upon its delivery to the consignee. (*Paine* v. *M. M. M. Ins. Co.*, 69 Me. 568; *Dickson* v. *Lodge*, 1 Stark. 180; *Haddow* v. *Parry*, 3 Taunt. 303 : 2 Arn. Ins. [6th. ed.] 1154; 2 Par. Mar. Ins. 528–534.)

But, though the bill was received as evidence of the truth of the statements contained in it, no exception was taken to the ruling and the record does not disclose an error in this respect which the appellant can avail itself of.

Roberts, a mate on the vessel, testified: "We took on board eight hundred and sixty-three hogsheads of this stuff at Cardenas." A shipmaster, who had carried melado, testified : "I saw melado in casks going on board 'The Brothers' Pride.'" It is true that he did not examine the contents of the casks, and judged only from external appearances. He also testified that the freight from Cardenas to New York was $5.25 per hogshead, and on cross-examination: "I know what the rate of freight was from what Captain Tower told me; he told me he had $5.25; I had $5.25 myself for molasses; the usual rate for molasses and melado was about the same." The mate and steward testified to the appearance of the leakage from some of the hogsheads, and their description would seem to indicate that these casks were not filled with melado. While the evidence, in respect to the cargo and the contract under which it was to be carried, is not as clear and as satisfactory as we could wish, still enough appears in the case to sustain the submission of this question to the jury.

The record does not contain the preliminary proofs of loss or the marine protest, and furnishes no basis for considering the fifth ground of the defendant's motion for a dismisal of the complaint.

The exceptions to the charge are, in effect, covered by the discussion of the right of the trial court to submit the case.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.