STEVENS VOISIN, APPELLANT, *v.* THE COMMERCIAL MUTUAL INSURANCE COMPANY, RESPONDENT.

*Marine insurance — seaworthiness — admission as to the genuineness of a paper — effect of, on a new trial — evidence — papers referred to to refresh a witness' memory.*

Very slight evidence in respect to seaworthiness is sufficient to make out a *prima facie* case upon that issue in an action for marine insurance.

The fact that a vessel built mostly of spruce has been left upwards of six months in the waters of the Gulf of Mexico, unprotected by copper and fully exposed to the action of worms, cannot be deemed of itself evidence tending to establish the vessel's unseaworthiness.

Evidence unexplained that a vessel sprung a leak and had to be abandoned at sea, although no heavy weather had been encountered, may justify a jury in finding that at the time the vessel left port she was not seaworthy.

There is no presumption, arising from the common experience that sea captains frequently bore holes in derelicts for the purpose of getting them out of the way, that will warrant a trial court in rejecting, as incompetent on that ground, evidence that, after a vessel had been abandoned, she was subsequently picked up at sea with a large number of augur holes found in her, offered in order to show the reason why the vessel had filled with water when there had been no cause therefor known to her officers.

The admission by counsel, upon a trial, of the genuineness of a paper offered by the other side, entered upon the minutes, is, unless specially restricted to be deemed an admission in the case, on which, without at least some notice of its withdrawal, the counsel for the party offering the paper has a right to rely upon any subsequent trial upon which he will then be entitled to read the paper in evidence, if it were competent, had it been proved.

One element necessary to make a paper, referred to by a witness for the purpose of refreshing his memory, competent evidence of itself, is testimony on the part of the witness that after reference to the paper he is unable to recollect the facts therein contained.

APPEAL by the plaintiff, Stevens Voisin, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 23d day of May, 1892, in favor of the defendant, on a dismissal of the complaint, at the close of the plaintiff's evidence, on the trial at the New York Circuit of an action upon a policy of marine insurance issued by the defendant upon merchandise on the bark, "L. E. Cann," for a voyage from Tecolutla, Mexico, to New York.

*F. R. Coudert*, for the appellant.

*T. Cleveland*, for the respondent.

Van Brunt, P. J.:

This action has previously been tried, and a verdict having been rendered by the jury in favor of the plaintiff, the judgment entered upon such verdict was reversed by the General Term for errors committed upon that trial.

Upon the retrial of the case, at the conclusion of the testimony of the plaintiff, a motion was made to dismiss the complaint upon the ground: First. That no cause of action had been proved. Second. That there was no proof of the performance of the condition of the policy requiring proof of loss and interest to be made before the loss is payable. Third. That there was no proof of the seaworthiness of the vessel sufficient to go to the jury. Fourth. That there was no proof of the shipment of the cargo insured sufficient to go to the jury. Fifth. That there was no proof of any such interest in the plaintiff as would enable him to maintain the action for his own benefit; and, Sixth. That there was a defect of parties, in that a partner of the plaintiff was not joined with the plaintiff.

Upon the previous appeal, some of these questions were determined; and the condition of the evidence in respect thereto has in no wise been varied, and it is, therefore, not necessary, upon the decision of this appeal, to rediscuss the questions which were then disposed of. It was then held, in respect to the second, fifth and sixth grounds taken upon the motion to dismiss, that they were not well taken. And hence the only questions now presented are that no cause of action has been proved, and that there was no proof of the seaworthiness of the vessel, nor of the shipment of the cargo insured, sufficient to go to the jury.

It is undoubtedly the rule that very slight evidence in respect to seaworthiness is sufficient to make out a *prima facie* case upon that issue. And this is necessarily the case from the fact that distinct, positive and clear evidence upon this point is frequently inaccessible, particularly after the loss of a vessel at sea.

Upon the part of the plaintiff, the evidence of the second mate of the vessel was offered, tending to show that she had made a voyage from Cardiff to Vera Cruz heavily laden with railroad iron, and that she did not leak more than ordinary vessels during that voyage.

It is true he testified that she required to be pumped every four hours in good weather, and every two hours in heavy weather,

but the witness testified that she did not leak more than vessels ordinarily do.   She arrived at Vera Cruz in September and lay there until January.   From Vera Cruz she went to Tecolutla, where she lay about two months, and finally left there about the end of March. The policy in question is dated the tenth of March, and it is urged that this vessel, built mostly of spruce, had been left upwards of six months in the waters of the Gulf of Mexico unprotected by copper and fully exposed to the action of worms, and that, therefore, there was plainly no proof of seaworthiness.   But we are unable to determine, in the absence of evidence, whether any such conditions would be apt to affect the seaworthiness of this vessel or not.   The evidence is that she had made a voyage heavily laden and was no more affected by wind and waves than vessels ordinarily are, from which fact the reference might be drawn that she was in a fair condition to prosecute an ocean voyage.   Now, whether her lying in the waters of the Gulf of Mexico would naturally tend to affect her seaworthiness was a question which had to be established by evidence and could not be proved by the assertions of counsel.   In this respect the case was in an entirely different position upon this trial than it was when all the evidence was in upon the former trial. The subsequent evidence undoubtedly tended to show, of itself, that the vessel was unseaworthy, for the reason that, although no heavy weather was encountered upon the voyage from Tecolutla, yet the vessel sprang a leak and had to be abandoned.   The second mate said that on this voyage they did not have anything more than fresh gales of wind — high seas running sometimes, but nothing extreme — there was nothing more than common in a fresh gale of wind ; that they had some rough weather, some fine weather, some strong winds, some head winds and some stormy weather, and that he did not know what caused the vessel to leak.   A day or two before the ship was abandoned they had quite a fresh gale of wind, and then it moderated, and it was after the gale moderated that the leak was discovered.   Subsequently, the ship was picked up at sea and taken into Norfolk.   This evidence unexplained might justify the jury in finding that at the time she left Tecolutla the ship was not seaworthy.

Evidence was offered by a person who had experience as a navigator to show that when she was examined at Norfolk a large

quantity of auger holes were found in her, and that in his opinion they had been there for sometime — some weeks, and this evidence was offered to show the reason why the vessel had filled with water when there had been no cause known to the witness who was an officer of the ship.

Upon motion of the counsel for the defendant this evidence was stricken out, and an exception taken. It seems to us that it was competent for the plaintiff to show the condition in which this vessel was found after she had been abandoned; and that the assumption by the learned court that this evidence was incompetent upon the ground that it is matter of common experience that captains frequently bore holes in derelicts for the purpose of getting them out of the way was not well founded, as no such violent presumption was to be indulged in by the court at least, whatever might have been the province of the jury upon the whole of the evidence. With this evidence before the court, there would seem to have been some evidence tending to show the seaworthiness of the vessel at the time of the issuance of the policy, and some explanation given of the reason why she filled with water, as is the undisputed evidence. There was, therefore, a question to be determined by the jury upon this point.

The claim that there was no proof of the shipment of the cargo insured, sufficient to go to the jury, does not seem to have been well founded; and, in connection with the proof upon that point, competent evidence seems to have been excluded. The witness Malpica testified: "I counted the packages shipped on board the L. E. Cann in January and February, 1882; but, as to the weight, I did not weigh them, as I had nothing to do with the weight; I counted the bales of rice and the bags of coffee, as well as the bales of rags and cases of zinc and the packages of bones; I recollect the number of packages by the exhibit marked 'F' shown me on my direct-examination,' which seems to have been the witness' bill for the shipping and lading of the merchandise therein mentioned upon the bark "L. E. Cann."

This evidence is certainly as strong as that which was presented in *Palmer* v. *Great Western Insurance Company* (116 N. Y., 599), in which case it was held that, while the evidence in respect to the cargo was not as clear and satisfactory as the court could wish, still enough appeared in the case to sustain the submission of the question to the jury.

Attention is also called to the exclusion of certain evidence, namely, the bills of lading; such exclusion being upon the ground that there was no proof as to the person by whom they were signed.

It appeared that upon the previous trial there was a distinct admission that the papers in question were signed by the master of the " L. E. Cann; " and notwithstanding this admission, made unqualifiedly and unreservedly upon the previous trial, the court excluded the papers, apparently upon the ground that they had not been properly proven. This, we think, was clearly error. The admission given was not for the purposes of the previous trial only. It was a broad, plain admission which, under the provisions of the Code, the plaintiff had a right to ask the counsel for the defendant to make before the trial.

Section 735 provides that " the attorney for a party may, at any time before the trial, exhibit to the attorney for the adverse party a paper material to the action and request a written admission of its genuineness. If the admission is not given within four days after the request and the paper is proved or admitted upon the trial, the expenses incurred by the party exhibiting it in order to prove its genuineness must be ascertained at the trial and paid by the party refusing the admission, unless it appears to the satisfaction of the court that there was a good reason for the refusal."

Now, in the case at bar upon the previous trial the counsel for the defendant was requested to admit the genuineness of these papers and such admission was taken in open court and entered upon the minutes without qualification or reservation, and was made for the express purpose of dispensing with formal proof upon the trial. And we think that, without at least some notice of the withdrawal of this admission, the counsel for the plaintiff had a right to rely thereon upon any subsequent trial and was entitled to read the papers in evidence, if they were competent, had they been proved. Admissions of this kind, unless specially restricted, are admissions in the cause and which follow it through all its stages and may be availed of at any subsequent period.

The point has been raised as to the exclusion of the papers to which the witness Malpica referred in his testimony for the purpose of refreshing his memory. But it will be seen, upon an examination

of this testimony, that no error was committed in their exclusion, for the reason that the testimony does not come up to the rule laid down in the case of the *National Ulster County Bank* v. *Madden* (114 N. Y., 284), it being said in that case: " It has uniformly been held admissible for the witness to refer to the original entries in respect to the facts which he was called upon to testify, and, if he verifies their correctness and is unable to recollect such facts, independently of such entries, they may be read in evidence."

In the case at bar there is no evidence upon the part of the witness that, after reference to these papers, he was unable to recollect the facts. His testimony simply was that, as I cannot remember the quantity of the goods shipped and the quantity of each kind of goods, I refer to the exhibits which are both true. And then he went on and told the quantity of the goods, but he nowhere stated that after an examination of those papers he was unable to recollect the facts therein contained, and hence one element necessary to make such papers competent evidence of themselves was absent.

We have examined the other exceptions to which attention has been called, but do not deem that any of them needs special mention.

It would seem, therefore, for the reasons heretofore stated that the learned court erred in taking the case from the jury and dismissing the complaint, and that the judgment must be reversed and a new trial ordered, with costs to the appellant to abide the event.

O'Brien and Follett, JJ., concurred.

Judgment reversed and new trial ordered, with costs to the appellant to abide event.